```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**HAROLD BERRY,**

      **Plaintiff,**

**v.**                              **CASE NO. 2:04-cv-00441**

**JO ANNE BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Harold E. Berry (hereinafter referred to as "Claimant"), filed an application for SSI on April 15, 1998, alleging disability as of December 1, 1992, due to back pain and a lung impairment.  (Tr. at 104-05, 116.)  The claim was denied initially and upon reconsideration.  (Tr. at 65-67, 70-72.)  On January 29, 1999, Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. at 72.)  The hearing was held on June 21, 1999, before the Honorable Steven D. Slahta.  (Tr. at 456-500.)  By decision dated March 29, 1996, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 48-59.)  Claimant appealed to the Appeals Council, and by decision dated August 30, 2001, the Appeals Council remanded Claimant's case to the ALJ.  (Tr. at 80-83.)  A second administrative hearing was held on October 22, 2002, before the Honorable John Murdock.  (Tr. at 405-55.)  By decision dated November 13, 2002, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 21-33.)  The ALJ's decision became the final decision of the Commissioner on March 17, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 12-14.)  On May 7, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has

the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 23.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of borderline intellectual functioning, chronic obstructive pulmonary disease, alcohol abuse and degenerative disc disease. (Tr. at 27.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 27-28.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 29.) As a result, Claimant cannot return to his past relevant work. (Tr. at 30.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as janitor, production worker and small hand assembly, which exist in significant numbers in the national economy. (Tr. at 31.) On this basis, benefits were denied. (Tr. at 31.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-four years old at the time of the administrative hearing following remand by the Appeals Council. (Tr. at 411.) Claimant completed the fifth grade at the age of fifteen or sixteen. He attended part of the sixth grade, but left before the end of the year. (Tr. at 410.) In the past, he worked as a coal miner, a factory worker and a laborer. (Tr. at 412-16, 444.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to include all of Claimant's limitations in a hypothetical question to the vocational expert; (2) the ALJ erred in finding that Claimant did not have a severe mental impairment; and (3) the ALJ erred in finding a substantial number of jobs that Claimant could perform. (Pl.'s Br. at 2-9; Pl.'s Reply at 1-3.)

The Commissioner argues that (1) the ALJ's decision is consistent with the statutory scheme for evaluating disability claims; (2) after April 1998, Claimant had the capacity to perform the light jobs identified by the vocational expert; (3) Claimant's hearing problems were not disabling; and (4) the ALJ adequately considered Claimant's level of intellectual functioning. (Def.'s Br. at 9-15.)

Inadequate Hypothetical

Claimant first argues that the ALJ erred in failing to include in the hypothetical question to the vocational expert, Claimant's reading, spelling and math levels. Claimant asserts this was a critical omission because the ALJ who decided Claimant's claim

initially, Judge Slahta, found Claimant to be "functionally illiterate." (Tr. at 488.) Claimant points out that if the current ALJ had found Claimant to be illiterate, as an individual closely approaching advanced age and capable of unskilled, light work, he would have met the Medical-Vocational Guidelines, Rule 202.09. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.09 (2002). In addition, Claimant asserts that the ALJ afforded significant weight to an assessment completed by Stephen Nutter, M.D., yet failed to include all of Dr. Nutter's limitations in the hypothetical question, including limitations in the ability to walk, sit, reach and push or pull. When these limitations were included, the vocational expert testified that most jobs earlier identified would be eliminated. Finally, Claimant argues the ALJ erred in failing to include limitations related to Claimant's hearing in the hypothetical question. (Pl.'s Br. at 2-5.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to

the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The court proposes that the presiding District Judge find that the ALJ's hypothetical question included those limitations supported by substantial evidence, and substantial evidence supports the ALJ's finding at step five of the sequential analysis that there are a significant number of jobs that Claimant could perform.

The ALJ posed the following hypothetical question:

> I'd like you to assume a person, age 53, with a 5th grade education. Further assume I find the person capable of a range of light work, limited these ways. The position should never require climbing of ropes, ladders and scaffolds, but could occasionally require all the other posturals of climbing, balancing, stooping, kneeling, crouching and crawling. The position should involve only moderate exposure to noise, minimal exposure to fumes, odors and gases and no exposure to hazardous machinery or heights. The position should call for – or should involve only simple, repetitive tasks or instructions, but I don't think there are any other mental or emotional limitations I'm going to impose other than those inherent in the education level and the requirement for simple tasks. I believe that would also include a certain level of supervision, so I don't need to ask for more supervision than that.

(Tr. at 445.) In response, the vocational expert identified the

jobs of janitor, production factory work and small hand assembly work. (Tr. at 445-46.)

The court proposes that the presiding District Judge find that the ALJ's hypothetical question adequately represented Claimant's limitations related to intellectual functioning, and there is no indication that Claimant is illiterate as that term is defined in the regulations. Instead, the ALJ's determination that Claimant has a marginal education (Tr. at 30), is supported by substantial evidence.

As Claimant points out, he would be disabled under the Medical-Vocational Guidelines, Rule 202.09, if he were illiterate. The regulations provide that "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1) (2002). In comparison, a marginal education "means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 416.964(b)(2).

Claimant testified that he completed the fifth grade and attended part of the sixth grade. Claimant testified he was sixteen years old and failed all grades except the third grade.

(Tr. at 410.) Claimant's school records are unavailable. (Tr. at 135.) Claimant underwent a number of consultative mental examinations and was administered intellectual testing, the results of which consistently placed him in the borderline range of intellectual functioning. (Tr. at 168, 194, 214, 268.) The most recent testing on the WRAT-3 showed Claimant reading on a third grade level, spelling on a second grade level and doing arithmetic on a third grade level. (Tr. at 269.) Finally, Mareda L. Reynolds, M.A., who examined Claimant on June 11, 2001, opined that Claimant was not limited in the ability to understand, remember and carry out very short and simple instructions. (Tr. at 271-72.)

The evidence cited above amounts to substantial evidence in support of the ALJ's finding that Claimant has a marginal education. As such, Claimant does not meet Rule 202.09 of the Medical-Vocational Guidelines. Furthermore, this same substantial evidence supports the ALJ's limitations included in the hypothetical question related to Claimant's level of intellectual functioning. The ALJ did not err in failing to include Claimant's reading, spelling and math levels because the limitations resulting therefrom, i.e., a need for simple, repetitive tasks, as well as Claimant's fifth grade education level, which were included in the hypothetical question, necessarily contemplated any limitations related to intellectual functioning.

It is true that the first ALJ, Judge Slahta, whose decision

was later remanded by the Appeals Council, stated in his hypothetical question that Claimant was functionally illiterate. (Tr. at 488.) As the current ALJ did on remand, ALJ Slahta in the earlier decision limited Claimant to performing unskilled and low stress work. (Tr. at 488.) ALJ Slahta made no finding in his decision that Claimant was illiterate or that he met the requirements of illiteracy as defined in the regulations. Instead, ALJ Slahta found Claimant only moderately limited in the ability to understand, remember and carry out detailed instructions. (Tr. at 54.) In his hypothetical question, ALJ Slahta stated Claimant was functionally illiterate and limited Claimant to unskilled, low stress work primarily working with things rather than people. (Tr. at 489.) The current ALJ found that Claimant had a fifth grade education and that he was capable of work involving only simple, repetitive tasks or instructions, which would necessarily involve some level of supervision. (Tr. at 445.) In short, ALJ Slahta did not make a finding in his decision that Claimant was illiterate as that term is defined in the regulations, and the findings of both ALJs related to Claimant's level of intellectual functioning are substantially similar.

The court further proposes that the presiding District Judge find that the ALJ did not err in failing to include in his hypothetical question, all of the limitations opined by Dr. Nutter, a consultative examiner who examined Claimant at the request of the

State disability determination service and completed a Medical Assessment of Ability to do Work-Related Activities (Physical). (Tr. at 221-31.)  As Claimant points out, the ALJ stated at one point in his decision that he afforded significant weight to the opinion of Dr. Nutter.  (Tr. at 25.)  At the administrative hearing, the vocational expert testified that when limitations from Dr. Nutter's Medical Assessment of Ability to do Work-Related Activities (Physical) were included in the original hypothetical question, the production factory and small hand assembly jobs would be eliminated and the janitorial jobs would not be "totally precluded, but they would certainly be limited."  (Tr. at 451.) The vocational expert had earlier identified 2500 regional janitorial jobs and 800,000 such jobs nationwide.  (Tr. at 445.) Later in his decision, the ALJ acknowledged the vocational expert's testimony about the limitations opined by Dr. Nutter, but stated that he did not find the medical evidence supports such limitations.  (Tr. at 31.)

In sum, the ALJ stated at one point in his decision that he afforded controlling weight to the opinion of Dr. Nutter, and then later inconsistently rejected some of Dr. Nutter's findings. Despite the inconsistency in the ALJ's decision, the court cannot recommend remand on this basis.  Even when all of the limitations opined by Dr. Nutter were included in the hypothetical question, the vocational expert identified a significant number of janitorial

12

jobs. Admittedly, the number of those jobs was "certainly limited," but they were not totally eliminated. (Tr. at 451.) It would have been helpful for the vocational expert to have identified how many janitorial jobs were left, but the United States Court of Appeals for the Fourth Circuit has determined that as few as 110 jobs may constitute a significant number. Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Given the fairly large number of janitorial jobs in the national economy, it is unlikely that the jobs remaining after Dr. Nutter's limitations were considered would have reduced the number of jobs available to the point of not constituting a significant number of jobs.

Finally, the court proposes that the presiding District Judge find that the ALJ did not err in his findings related to Claimant's hearing. In his decision, the ALJ determined that Claimant did not suffer a severe hearing impairment. The ALJ relied on observations made during consultative examinations that Claimant had no significant limitations in hearing (Tr. at 150, 165, 193, 211, 214, 223) and that at the hearing Claimant had no difficulty hearing normal conversation or comments directed to him. (Tr. at 23.) Despite this finding, the ALJ determined in his residual functional capacity finding that Claimant "should avoid moderate [exposure] to noise." (Tr. at 29.) In addition, he included this limitation in the hypothetical question to the vocational expert. (Tr. at 445.)

Claimant asserts that the ALJ erred in his findings related to

13

Claimant's hearing, citing the testimony of Robert Marshall, M.D., the medical expert who testified at the administrative hearing that Claimant should not work in a "real noisy environment" and Claimant's testimony at the administrative hearing that he needed a hearing aid and could not hear unless people spoke loudly. In addition, Claimant cites to the statement of his counsel at the administrative hearing that he wanted the record to reflect that Claimant was "having some hearing difficulty. He cups his ears to hear you, and you speak - - speaking a little bit louder than normal." (Tr. at 409.) In response, the vocational expert testified that was "a good comment." (Tr. at 409.)

The ALJ's decision to include the limitation that Claimant could work in jobs involving "only moderate exposure to noise" is supported by substantial evidence of record. In addition, it adequately contemplates any limitation opined by Dr. Marshall or reflected in the comment of Claimant's counsel at the administrative hearing and, the court proposes that the presiding District Judge so find.

Based on the above, the court proposes that the presiding District Judge find that substantial evidence supports the limitations included by the ALJ in his hypothetical question to the vocational expert. The court further proposes that the presiding District Judge find that substantial evidence supports the ALJ's finding at step five of the sequential analysis that there are a

14

significant number of jobs in the national and regional economy that Claimant could perform.

<u>Severe Mental Impairment</u>

Next, Claimant argues that the ALJ did not properly analyze which of Claimant's impairments were severe. In particular, Claimant argues that the ALJ erred in finding that he does not have a severe mental impairment.

In his decision, the ALJ made the following findings related to Claimant's allegations of severe depression and anxiety:

> The claimant alleges problems with his nerves. However Ms. Reynolds noted that the claimant received a score of 15 on the Beck Anxiety Inventory which was considered in the mild range. Dr. Marshall testified that the claimant's anxiety is secondary to alcohol abuse. The claimant's activities of daily living do not indicate he is significantly depressed or anxious. He enjoys visiting with his family and friends and goes to church occasionally. He plays with his grandchildren each day. The state agency found that the claimant did not have a severe mental impairment (Exhibit B-6F). The undersigned concurs with the state agency opinion and finds that anxiety and depression are not severe impairments.

(Tr. at 23.)

Claimant cites to four consultative mental examinations by Sheila Emerson Kelly, M.A., Kelly Rush, M.A., Mareda L. Reynolds, M.A. and Margaret Gomez, Ph.D. and argues that the ALJ erred in finding Claimant's mental impairments nonsevere based on the testimony of Dr. Marshall and a State agency medical source who opined that Claimant's mental impairments were not severe. Claimant argues that the State agency medical source did not have

access to the reports by Ms. Kelly and Ms. Reynolds.

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant does not suffer a severe mental impairment other than borderline intellectual functioning and alcohol abuse. Ms. Kelly, Ms. Rush, Ms. Reynolds and Dr. Gomez diagnosed Claimant with alcohol dependence or abuse, most recently in partial remission. (Tr. at 169, 195, 215, 269, 353.) While Dr. Marshall was called to testify about Claimant's physical impairments, his observation that Claimant's primarily problem was related to alcohol abuse (Tr. at 433) certainly is consistent with the findings of the above sources who conducted consultative mental examinations. Indeed, Ms. Kelly observed that Claimant's anxiety was "possibly related to alcohol abuse." (Tr. at 195.) In short, substantial evidence of record supports a finding that absent alcohol abuse, Claimant's anxiety and depression are not severe mental impairments.

Thus, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant does not suffer severe mental impairments in addition to borderline intellectual functioning and alcoholism.

<u>Substantial Number of Jobs in the Regional/National Economy</u>

Finally, Claimant argues that the ALJ's decision is not based on substantial evidence because the ALJ failed to prove there are a significant number of jobs that Claimant could perform.

Specifically, Claimant contends that because the ALJ limited him to jobs involving simple, repetitive tasks, Claimant would be limited to a General Educational Development ("GED") level of one as defined in the Dictionary of Occupational Titles. The DOT explains that the GED scale, which is comprised of six levels, "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and is composed of three divisions, reasoning development, mathematical development and language development. U.S. Department of Labor, Dictionary of Occupational Titles, Appendix C (4th ed. 1991). The lowest level, level one, requires "commonsense understanding to carry out simple one- or two-step instructions," the ability to "[a]dd and subtract two-digit numbers," and print and speak simple sentences and recognize the meaning of 2,500 two and three syllable words, among others. Id. According to the Claimant, the vocational expert testified that reading and math skills were not needed for the jobs of janitor, production worker and small hand assembly, but "she was unable to specify the GED level of these jobs. Equally as important, without a GED level, it cannot be established that these occupations involve simple one or two step instructions." (Pl.'s Br. at 9.) Thus, Claimant argues the Commissioner failed to meet her burden of "establishing Berry's ability to carry out these jobs." (Pl.'s Br. at 9.)

While the vocational expert testified she did not know the GED

17

levels for the jobs she identified, she stated that she was "absolutely [positive]" that the positions she identified did not require an education. (Tr. at 448-49.) The vocational expert testified that she generally observes the Specific Vocational Preparation ("SVP") in the DOT. SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Id. The vocational expert testified that the jobs she identified would require no more than an SVP of two or three. An SVP of two or three involves jobs requiring anything beyond a short demonstration to one to three months of demonstration. Id. Consistent with the vocational expert's testimony, the court notes that the job of small products assembler in the DOT has an SVP level of 2 and GED levels of one for math and language and two for reasoning. Id. at 706.684-022. Therefore, the court proposes that the presiding District Judge find that the ALJ's determination at step five of the sequential analysis is supported by substantial evidence.

  For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

  The parties are notified that this Proposed Findings and

Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

August 30, 2005  
Date

Mary E. Stanley  
United States Magistrate Judge